1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT

10

NORTHERN DISTRICT OF CALIFORNIA

11

SAN JOSE DIVISION

12

| | |
|---|---|
| VALERIE J. MARRS-ESPINOZA, | ) Case No.: 5:14-cv-00921-PSG |
| ) | |
| Plaintiff, | ) **ORDER GRANTING DEFENDANT'S** |
| ) | **MOTION TO REMAND FOR** |
| v. | ) **FURTHER PROCEEDINGS** |
| ) | |
| CAROLYN W. COLVIN, | ) |
| ) | **(Re: Docket Nos. 21, 28)** |
| Defendant. | ) |
| | ) |

Plaintiff Valerie J. Marrs-Espinoza suffers from a combination of physical and mental

impairments, namely back pain and resulting anxiety and depression.[1]  After Marrs-Espinoza

applied for disability insurance benefits under Title II of the Social Security Act, the

Commissioner of Social Security found that she had a disability beginning August 1, 1998.[2]  In

2002, the Commissioner conducted a Continuing Disability Review and found Marrs-Espinoza

remained disabled.[3]  In 2011, the Commissioner again conducted a CDR but found that Marrs-

---

[1] *See* Docket No. 13-3 at 23; Docket No. 28 at 3.

[2] *See* Docket No. 16-3 at 15.

[3] *See id.* at 17.

1

Case No.: 5:14-cv-00921-PSG
ORDER GRANTING DEFENDANT'S MOTION TO REMAND FOR FURTHER
PROCEEDINGS

Espinoza no longer suffered from a disability as of March 30, 2011.[4]  After a state agency disability hearing, the CDR decision was upheld.  An Administrative Law Judge upheld this determination upon reconsideration.[5]  The ALJ also found that only Marrs-Espinoza's "disorders of the back, s/p back fusion" were medically determinable,[6] and concluded that neither Marrs-Espinoza nor her treating physician, Dr. Maureen Miner, were credible.[7]  The ALJ found Marrs-Espinoza's condition had improved, though he was ambiguous as to whether she had the residual functional capacity to perform light work including past relevant work.[8]

The Commissioner agrees with Marrs-Espinoza that the ALJ made errors in his determination and requests remand for further administrative proceedings.[9]  Where the parties disagree is on what happens next.  The Commissioner urges that Marrs-Espinoza should be permitted to present additional evidence, including third-party testimony and further medical records, to an ALJ.[10]  Marrs-Espinoza argues that the court should hold that the ALJ's record was

---

[4] *See* Docket No. 16-3 at 24.

[5] *See id.*

[6] *See id.* at 18.

[7] *See id.* at 18, 21.

[8] *See id.*at 22.

[9] *See* Docket No. 28 at 4; 42 U.S.C. § 405(g).

[10] *See* Docket No. 28 at 4-5 ("Upon remand, the Appeals Council will instruct the ALJ to reevaluate the severity of the claimant's mental impairments pursuant to the special technique set forth in 20 C.F.R. § 404.1520a; reevaluate the medical opinions of record and explain the weight given to this evidence; reevaluate the claimant's credibility pursuant to SSR 96-7p, as well as third party statements pursuant to SSR 06-3p; reassess the claimant's maximum residual functional capacity; and, if necessary, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the occupational base."); *see also*  Docket No. 16-7 at 78-79.

2

Case No.: 5:14-cv-00921-PSG
ORDER GRANTING DEFENDANT'S MOTION TO REMAND FOR FURTHER PROCEEDINGS

incomplete, the analysis faulty in allocating weight and the findings ultimately improper, such that on remand the Commissioner must simply reinstate Marrs-Espinoza's disability benefits.[11]

Though there is no doubt that the ALJ significantly erred, because the record is incomplete the court must allow the ALJ the opportunity to evaluate Marrs-Espinoza's disability in light of a complete record. The court therefore DENIES Marrs-Espinoza's motion for summary judgment and for reinstatement of benefits and GRANTS the Commissioner's motion to remand the case for further proceedings.[12]

## I.

Through its administrative law judges, the Commissioner of Social Security determines the continued disability status of claimants by following an eight-step evaluation process.[13]

At step one, the ALJ must determine if the claimant is engaged in substantial gainful activity. If so, the claimant is no longer considered to have a disability.[14] If not, the ALJ continues to step two.

At step two, the ALJ must determine whether the claimant has an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed

---

[11] *See* Docket No. 21 at 2.

[12] *See INS v. Ventura*, 537 U.S. 12, 16 (2002) ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands"); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.").

[13] *See* 20 C.F.R. § 404.1594.

[14] *See* 20 C.F.R. § 404.1594(f)(1).

Case No.: 5:14-cv-00921-PSG
ORDER GRANTING DEFENDANT'S MOTION TO REMAND FOR FURTHER
PROCEEDINGS

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
For the Northern District of California

in 20 C.F.R. § 404, Subpart P, Appendix 1.[15]  If so, her disability status continues.[16]  If not, the ALJ moves on to step three.

At step three, the ALJ must determine whether medical improvement has occurred.[17] Medical improvement is any decrease in medical severity of the impairment(s) as established by improvement in symptoms, signs and/or laboratory findings.[18]  If medical improvement has occurred, the analysis proceeds to the fourth step.  If not, the analysis proceeds to the fifth step.

At step four, the ALJ must determine whether medical improvement is related to the ability to work.[19]  Medical improvement is related to the ability to work if it results in an increase in the claimant's RFC to perform basic work activities.[20]  If medical improvement is not related to the claimant's ability to do work, the ALJ moves on to step five.  If the medical improvement is related to the claimant's ability to do work, the ALJ proceeds to the sixth step.

At step five, the ALJ must determine if an exception applies to step three's "no medical improvement" or step four's "medical improvement not related to the claimant's ability to work."[21]  If none apply, the claimant's disability continues.  If an exception applies under 20 C.F.R. § 404.1594(e), the claimant's disability ends—and these exceptions may be considered at

---

[15] *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

[16] *See* 20 C.F.R. § 404.1594(f)(2).

[17] *See* 20 C.F.R. § 404.1594(f)(3).

[18] *See* 20 C.F.R. § 404.1594(b)(1).

[19] *See* 20 C.F.R. § 404.1594(f)(4).

[20] *See* 20 C.F.R. § 404.1594(b)(3).

[21] *See* 20 C.F.R. § 404.1594(f)(5).

Case No.: 5:14-cv-00921-PSG
ORDER GRANTING DEFENDANT'S MOTION TO REMAND FOR FURTHER PROCEEDINGS

any point in the process.  If an exception applies under 20 C.F.R. § 404.1594(d), the analysis proceeds to step six.

At step six, the ALJ must determine whether all of the claimant's current impairments in combination are severe.[22]  If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the claimant's disability ends.  If the current impairments do significantly limit the claimant's ability to do basic work activities, the ALJ continues to step seven.

At step seven, the ALJ must assess the claimant's RFC based on the current impairments and determine if she can perform past relevant work.[23]  If the claimant has the capacity to perform past relevant work, her disability has ended.  If not, the ALJ continues to step eight.

At step eight, the ALJ must determine whether other work exists that the claimant can perform, given her RFC assessment and considering her age, education and past work experience.[24]  If the claimant can perform other work, she is no longer disabled.  If the claimant cannot perform other work, her disability continues.

When, as here, a recipient of disability benefits challenges the cessation of benefits, the central issue is whether the recipient's medical impairments have improved to the point where

---

[22] *See* 20 C.F.R. §§ 404.1594(f)(6), 404.1521.

[23] *See* 20 C.F.R. §§ 404.1594(f)(7), 404.1560.

[24] *See* 20 C.F.R. § 404.1594(f)(8); *but see* an exception at § 404.1594(f)(9) ("We may proceed to the final step, described in paragraph (f)(8) of this section, if the evidence in your file about your past relevant work is not sufficient for us to make a finding under paragraph (f)(7) of this section about whether you can perform your past relevant work. If we find that you can adjust to other work based solely on your age, education, and residual functional capacity, we will find that you are no longer disabled, and we will not make a finding about whether you can do your past relevant work under paragraph (f)(7) of this section. If we find that you may be unable to adjust to other work or if § 404.1562 may apply, we will assess your claim under paragraph (f)(7) of this section and make a finding about whether you can perform your past relevant work.").

Case No.: 5:14-cv-00921-PSG
ORDER GRANTING DEFENDANT'S MOTION TO REMAND FOR FURTHER PROCEEDINGS

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

she is able to perform substantial gainful activity.[25]  Whether an individual's entitlement to benefits continues depends on a two-part evaluation process:  (1) whether "there has been any medical improvement in [the individual's] impairment(s)"[26] and, if so, (2) "whether this medical improvement is related to [the individual's] ability to work."[27]  Under the first prong, the implementing regulations define "medical improvement" as "any decrease in the medical severity of [the individual's] impairment(s) which was present at the time of the most recent favorable medical decision that [the individual was] disabled or continued to be disabled."[28]  "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the individual's] impairment(s). . . . If there has been a decrease in the severity of the impairments since the favorable decision, the medical improvement is related to the individual's ability to work only if there has been a corresponding 'increase in [the claimant's] functional capacity to do basic work activities.'"[29]

        The second part of the cessation analysis focuses on whether the individual has the ability to engage in substantial gainful activity.[30]  The implementing regulations for this part of the evaluation incorporate many of the standards set forth in the regulations that govern initial

---

[25] *See* 42 U.S.C. § 423(f)(1); *Kennedy v. Astrue*, 247 F. App'x 761, 764 (6th Cir. 2007).

[26] 20 C.F.R. § 404.1594(b).

[27] 20 C.F.R. § 404.1594(b).

[28] *Kennedy*, 247 F. App'x at 764–65 (citing 20 C.F.R. § 404.1594(b)(1)).

[29] *Kennedy*, 247 F.  App'x at 765 (quoting 20 C.F.R. § 404.1594(b)(3), 20 C.F.R. § 404.1594(b)(1)(i)); *see also Nierzwick v. Commissioner of Social Security*, 7 F. App'x 358, 361 (6th Cir. 2001).

[30] *See Kennedy*, 247 F. App'x at 765.

Case No.: 5:14-cv-00921-PSG
ORDER GRANTING DEFENDANT'S MOTION TO REMAND FOR FURTHER PROCEEDINGS

United States District Court
For the Northern District of California

disability determinations.[31]  But in the cessation analysis, "the ultimate burden of proof lies with the Commissioner in termination proceedings."[32]  An increase in the claimant's functional capacity leads to a cessation of benefits only if, as a result of any increase, the claimant can perform past work or other work that exists in significant numbers in the national economy.[33]

Marrs-Espinoza received Title II disability benefits as of an onset of August 1, 1998.  A favorable continuing disability review occurred on March 5, 2002 which now constitutes the "comparison point decision."[34]  The Commissioner determined Marrs-Espinoza no longer qualifies for disability benefits as of March 30, 2011.[35]  A state agency disability hearing officer upheld this determination upon reconsideration.  After a video hearing, an ALJ affirmed.[36]

Marrs-Espinoza now requests that this court remand to reinstate benefits,[37] and the Commissioner requests that this court remand for further proceedings.[38]

---

[31] *See id.* (citing 20 C.F.R. § 404.1594(b)(5) and (f) (7)).

[32] *Id.* (citing 20 C.F.R. § 404.1594(b)(5) and (f)(7); *Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991)).

[33] *See* 20 C.F.R. § 404.1594(f)(7), (8); *but see* Docket No. 16-3 at 17 (According to the ALJ's opinion, "Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration.  In order to support a finding that an individual is not disabled at this step, the Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education and work experience.").

[34] *See* Docket No. 21 at 1, n.1.

[35] *See* Docket No. 16-3 at 16.

[36] *See id.*

[37] *See* Docket No. 21 at 2.

[38] *See* Docket No. 28 at 4; pursuant to 42 U.S.C. § 405(g).

Case No.: 5:14-cv-00921-PSG
ORDER GRANTING DEFENDANT'S MOTION TO REMAND FOR FURTHER PROCEEDINGS

## II.

The court has jurisdiction under 28 U.S.C. § 1331.  The parties further consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[39]  The court finds this motion suitable for disposition on the papers in light of this court's local rules and procedural order.[40]

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.[41] "Substantial evidence" means "more than a mere scintilla, but less than a preponderance"[42] and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[43]  In determining whether substantial evidence supports an ALJ's subsidiary factual determinations, the court may not substitute its judgment for that of the ALJ, but must nonetheless weigh both evidence supporting and detracting from the ALJ's conclusion.[44]

---

[39] *See* Docket Nos. 7, 9.

[40] *See* Docket No. 4; Civil L.R. 7–1(b) ("In the Judge's discretion, or upon request by counsel and with the Judge's approval, a motion may be determined without oral argument or by telephone conference call."); Civil L.R. 16-5.

[41] *See Bray v. Comm'r of the Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

[42] *Bray*, 554 F.3d at 1222.

[43] *Id.*

[44] *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

Case No.: 5:14-cv-00921-PSG
ORDER GRANTING DEFENDANT'S MOTION TO REMAND FOR FURTHER
PROCEEDINGS

Reasoning the ALJ did not assert cannot be relied upon to affirm his/her findings[45]—"only . . . the grounds articulated by the agency" may be considered.[46]

Usually, "[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded."[47]  The Ninth Circuit has devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits:  (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.[48]  Because the record has not been fully developed here, the court may not remand for reinstatement of benefits.

## III.

Pursuant to 20 C.F.R. §§ 404.1598, the ALJ conducted the eight-step evaluation process for determining whether an individual should maintain disability status.[49]  At step one, the ALJ found Marrs-Espinoza has not engaged in substantial gainful activity.[50]  At step two, the ALJ found Marrs-Espinoza does not have an impairment or combination of impairments which meets

---

[45] *See Bray*, 554 F.3d at 26; *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

[46] *Cequerra v. Sec'y*, 933 F.2d 735, 738 (9th Cir. 1991); *accord Byrnes v. Shalala*, 60 F.3d 639, 641 (9th Cir. 1995).

[47] *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (citing *Lewin v. Schweiker,* 654 F.2d 631, 635 (9th Cir. 1981)).

[48] *See Garrison*, 759 F.3d at 1020-21; *Ryan,* 528 F.3d at 1202; *Lingenfelter v. Astrue,* 504 F.3d 1028, 1041 (9th Cir. 2007); *Orn v. Astrue,* 495 F.3d 625, 640 (9th Cir. 2007); *Benecke v. Barnhart,* 379 F.3d 587, 595 (9th Cir. 2004); *Smolen,* 80 F.3d at 1292.

[49] *See* Docket No. 16-3 at 16.

[50] *See id.* at 18.

Case No.: 5:14-cv-00921-PSG
ORDER GRANTING DEFENDANT'S MOTION TO REMAND FOR FURTHER
PROCEEDINGS

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

or equals a listing.[51]   At step three, the ALJ found medical improvement has occurred as of March 30, 2011.[52]   Though the ALJ's finding of "disorders of the back, s/p back fusion" was the same medically determinable impairment found at CPD, the ALJ found the severity had decreased based on:  a change in range of movement,[53] "minimal treatment," and the ALJ's finding that Marrs-Espinoza had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(h).[54]

At step four, the ALJ found Marrs-Espinoza's medical improvement was related to her ability to do work because it resulted in a less restrictive RFC.[55]   Thus the ALJ did not make a determination at step five, but instead moved on to step six.  At step six, the ALJ found that as of March 30, 2011, Marrs-Espinoza's impairment was severe and caused more than minimal limitation in her ability to perform work activities.[56]   At step seven, the ALJ stated both "the claimant is able to perform past relevant work" as well as "claimant was not able to perform past relevant work as of March 30, 2011."[57]   The ALJ moved on to step eight and relied on the medical vocational grid rules 202-13-15 to determine that Marrs-Espinoza can perform other work, thus affirming the termination of her benefits.[58]

---

[51] *See id.* at 19.

[52] *See id.*

[53] The ALJ did not explain how the change in range of movement was an improvement.

[54] *See* Docket No. 21 at 4-5; Docket No. 16-3 at 19-20.

[55] *See* Docket No. 16-3 at 21.

[56] *See id.* at 22.

[57] *See* Docket No. 16-3 at 22, 23.

[58] *See id.* at 23-24.

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.

Having reviewed the ALJ's reasoning, considering adverse as well as reinforcing evidence, the court finds substantial evidence and proper application of law do not support the ALJ's decision.  Because additional proceedings may remedy defects in the original administrative proceedings, the case is remanded for further fact finding consistent with the following.[59]

*First*, the ALJ erred in developing the record.  Consultative examiner Dr. Dale Van Kirk received no medical records for review, and non-examining agency physician Dr. B. Morgan at least failed to review treating physician Miner's April 18, 2012 statement.[60]  At the hearing, Marrs-Espinoza never signed an I-2-6-98 waiver of representation form, and thus her waiver failed to meet the *Higbee* requirements.[61]  The ALJ did not discuss the CPD, the Commissioner's initial findings that Marrs-Espinoza's condition had improved or the light work he thought she could perform.  Further, either the record is incomplete, or Marrs-Espinoza never received notice of the reconsideration hearing which she failed to attend.[62]  The Commissioner's SSA-3441 form also was incomplete in the record.[63]  Finally, the ALJ should not have refused Marrs-Espinoza's husband's testimony at the hearing.[64]  On remand, the ALJ must ensure that the record is fully developed.

---

[59] *Cf. Higbee v. Sullivan*, 975 F.2d 558, 563 (9th Cir. 1992).

[60] *See* Docket No. 16-7 at 8.

[61] *See Higbee*, 975 F.2d at 561-62; *see also* Docket No. 16-7 at 78-79.

[62] *See* Docket No. 16-1:1.

[63] *See* Docket No. 21 at 15; Docket No. 21-1.

[64] *See* Docket No. 16-3 at 81.

11

Case No.: 5:14-cv-00921-PSG
ORDER GRANTING DEFENDANT'S MOTION TO REMAND FOR FURTHER PROCEEDINGS

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Second*, the ALJ erred in weight allocation. An ALJ must accord some weight to a treating physician's opinion.[65] If the ALJ rejects the treating physician's opinion, the ALJ must also provide specific and legitimate reasons for doing so.[66] Finding Miner's report does not reflect objective findings,[67] the ALJ gave Miner's opinion no weight, instead relying on ambiguous "agency assessments—to the extent they reflect light exertional activity."[68] However, Marrs-Espinoza highlights Miner's uncontroverted objective findings:

- Miner diagnosed Marrs-Espinoza with myofascial pain syndrome, fibromyalgia, gastroresophageal reflux disease, opiate dependence, chronic pain syndrome, lumbar discogenic disease with tear, herniated nucleus polposis, radiculopathy, failed back syndrome, a history of lumbar fusion and pain with psychological features secondary to a medical condition.[69]

- Miner found Marrs-Espinoza has medically deteriorated since her date of maximum medical improvement with ongoing need for treatment as well as new treatment from current clinicians.[70]

---

[65] *See* SSR 96-2p, 1996 WL 374188 at *4 (July 2, 1996) ("Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927.").

[66] *See Orn*, 495 F.3d at 632 ("Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record.") (internal quotation marks and citations omitted) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

[67] *See* Docket No. 16-3 at 21-22; *See Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings . . . does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.").

[68] *See* Docket No. 16-3 at 21.

[69] *See* Docket No. 16-9 at 70.

[70] *See id.*

12

Case No.: 5:14-cv-00921-PSG
ORDER GRANTING DEFENDANT'S MOTION TO REMAND FOR FURTHER
PROCEEDINGS

1

2

- Miner explained that Marrs-Espinoza's disability led to frequent missed work days, rendering her uncompetitive and "totally disabled from this perspective."[71]

3

4

- The ALJ also found "the objective findings included '[metacarpophalangeal]' pain with range of motion."[72]

5

6

7

- The ALJ did not address Miner's medication regiment of Trazadone and Effexor or Cymbalta for Marrs-Espinoza's resulting depression and anxiety.

8

9

10

Marrs-Espinoza argues that under SSR 96-2p, the ALJ's errors of failing to weigh or consider objective findings require crediting Miner's opinions as true.[73]  The Commissioner does not counter Marrs-Espinoza in its brief, other than to generally request further proceedings.

11

12

13

14

15

16

17

The ALJ also failed to weigh the opinions of consultative psychologist examiner Dr. Pauline Bonilla and non-examining psychologist Dr. Heather Barrons or consider their impact on her disability status when he found Marrs-Espinoza's mental impairment as "non-severe." Marrs-Espinoza's mental issues were treated during her CPD, and she alleged mental impairment in this proceeding.[74]  Upon rehearing, the ALJ must properly weigh the physician's opinions and consider Marrs-Espinoza's mental impairment.

18

***Third***, the ALJ erred in his analysis at step two, three, seven and eight.

19

20

21

22

At step two, the ALJ must consider the extent to which a mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [ ] overall functional performance, any

23

---

24

[71] *See id.* at 70.

25

[72] Docket No. 16-3 at 20, Docket No. 16-8 at 24; (citing Exh. 3F at 8).

26

[73] *See* Docket No. 21 at 13.

27

[74] *See* Docket No. 16-7 at 71; Docket No. 16-8 at 4-9, 34-44, 75; Docket No. 16-3 at 75.

28

13

Case No.: 5:14-cv-00921-PSG
ORDER GRANTING DEFENDANT'S MOTION TO REMAND FOR FURTHER
PROCEEDINGS

episodic limitations [and] the amount of supervision or assistance [ ] require[d]."[75]  The ALJ must consider activities of daily living; social functioning; concentration, persistence or pace; and episodes of decomposition, and categorize the claimant's limitations as none, mild, moderate, marked or extreme.[76]  Section 404.1520a (e)(2) mandates that the ALJ's decision show "the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section."[77]

Marrs-Espinoza claims mental impairment due to long-term use of medications, which she says affects her memory, concentration, stress and anxiety.[78]  Bonilla only partially analyzed Marrs-Espinoza's mental impairment,[79] and the ALJ did not go through the required steps in considering Marrs-Espinoza's metal impairment claims.[80]

Also at step two, after finding Marrs-Espinoza was not gainfully employed, the ALJ did not determined whether Marrs-Espinoza had an impairment or combination of impairments which meets or equals a listing.[81]  Consideration of Miner's findings might have led the ALJ to determine the aggregate of Marrs-Espinoza's impairments were equivalent to listing 12.04 affective disorders.  However, the ALJ did little more than mention Miner's diagnoses.

---

[75] 20 C.F.R. § 404. 1520a (c)(2).

[76] *See* 20 C.F.R. § 404.1520a(c)(3), (4).

[77] 20 C.F.R. § 404.1520a (e)(2).

[78] *See* Docket No. 16-8 at 75.

[79] *See id.* at 7-8.

[80] *See id* at 75.

[81] *See* 20 C.F.R. § 404.1594(f)(2).

14

Case No.: 5:14-cv-00921-PSG
ORDER GRANTING DEFENDANT'S MOTION TO REMAND FOR FURTHER
PROCEEDINGS

United States District Court
For the Northern District of California

Further, in his analysis of Marrs-Espinoza's subjective pain, the ALJ failed to apply the *Cotton* two-step test. [82]  If (1) the claimant produces objective medical evidence of an impairment or combination of impairments which (2) could reasonably be expected to produce pain or other symptoms, and there is no testimony showing malingering, then the ALJ must either accept the claimant's testimony on the severity of her symptoms or provide specific findings or state clear and convincing reasons to reject it.[83]  The claimant need only show that his or her impairment could reasonably have caused some degree of the symptom.[84]  The ALJ then must consider all of the factors enumerated in SSR 96-7p and 20 C.F.R. § 416.929(c)(3)(i)-(vii).[85]

The ALJ did not do so—such as failing to account for Marrs-Espinoza's experience of side effects from long-term medication use.  He found her testimony of the intensity, persistence and limiting effects of her medically determinable impairments (back pain) incredible "on the

[82] *See Batson v. Commissioner, Social Security Admin.*, 359 F.3d at 1196 (quoting *Smolen*, 80 F.3d at 1281).

[83] *See id.*

[84] *See Smolen*, 80 F.3d at 1282. This approach "reflects the highly subjective and idiosyncratic nature of pain and other such symptoms" and the fact that the amount of pain caused by a physical impairment can vary greatly from claimant to claimant. *Id.* (citing *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989)). Once a claimant produces objective medical evidence of an underlying medical impairment, "'an [ALJ] may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain.'" *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004), (quoting *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001)).

[85] These factors are:
    1. The individual's daily activities;
    2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
    3. Factors that precipitate and aggravate the symptoms;
    4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
    5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
    6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
    7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  *See* 20 C.F.R. § 416.929(c)(3).

Case No.: 5:14-cv-00921-PSG
ORDER GRANTING DEFENDANT'S MOTION TO REMAND FOR FURTHER
PROCEEDINGS

issue of the degree to which pain interferes with her work activities."[86]  This finding primarily

was due to sporadic treatment or missed appointments and the elderly care Marrs-Espinoza

performed ten hours weekly.[87]  In determining credibility, an ALJ may normally rely upon a

claimant's noncompliance with treatment to provide clear and convincing evidence for an

adverse credibility finding.[88]  Here, however, the ALJ failed specifically to "identify what

testimony is not credible and what evidence undermines the claimant's complaints"[89]—especially

when compliance relies on memory which Marrs-Espinoza claims to have lost.  The ALJ's

reasons for rejecting Marrs-Espinoza's credibility do not appear to be based on substantial

evidence, and the ALJ has not provided "specific, clear and convincing reasons" as required.[90]

Upon remand, the ALJ must provide the significant history, including examination and

laboratory findings, and the functional limitations considered in reaching a conclusion about the

severity of mental impairment or impairments under Section 404.152a.  The ALJ must follow the

necessary steps in analyzing the diagnoses of Miner and the subjective pain and credibility of

Marrs-Espinoza.

At step three, "medical improvement" is defined as "any decrease in the medical severity

of [the individual's] impairment(s) which was present at the time of the most recent favorable

medical decision that [the individual was] disabled or continued to be disabled."[91]  "A

---

[86] *See* Docket No. 16-3 at 21.

[87] *See id.*; *but see* Docket No. 16-7 at 69 ("Don't like to get too many shots. (Not good for you)"); *see also id.* at 78-79 (explaining why Marrs-Espinoza missed appointments—such as having no one to driver her—the purpose her appointments, and her concern with overmedicating).

[88] *See Orn*, 495 F.3d at 638.

[89] *Reddick*, 157 F.3d at 722 (citations omitted).

[90] *See Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

[91] *Kennedy*, 247 Fed. Appx. at 764-65 (citing 20 C.F.R. § 404.1594(b)(1)).

16

Case No.: 5:14-cv-00921-PSG
ORDER GRANTING DEFENDANT'S MOTION TO REMAND FOR FURTHER
PROCEEDINGS

determination that there has been a decrease in medical severity must be based on changes

(improvement) in the symptoms, signs and/or laboratory findings associated with [the

individual's] impairment(s)" of the CDP.[92]   The Commissioner bears the burden of establishing

that a claimant has experienced medical improvement that would allow her to engage in

substantial gainful activity.[93]

Here, the ALJ did not discuss Marrs-Espinoza's depression and affective mental disorders

at the time of the CPD,[94] and nor did he compare Van Kirk's findings to symptoms at the time of

the CPD.[95]   As a result, there is no indication of improvement or reasonably objective finding

that, for example, Marrs-Espinoza's range of motion improved.  The ALJ found Marrs-

Espinoza's movements were pain-free, when indeed Van Kirk noted "[t]he low back pain

radiates down both legs.  Coughing or sneezing does increase the pain.  Also, the pain increases

if she has to lift heavy objects, bend, twist, stoop, crouch, climb, kneel, push, crawl, or pull.  She

can stand and walk for about one hour.  Sitting is limited to about one hour."[96]  "She has a 14

centimeter longitudinal scar over the mid to lower lumbar spine area.  This is where her main

pain is.  She also has a 12 centimeter longitudinal scar over the lower abdomen from her anterior

interbody fusion.  The pain in the lower back does radiate into the waist area posteriorly."[97]

Further, Marrs-Espinoza's pain medications have objectively increased, and Marrs-Espinoza's

---

[92] 20 C.F.R. §§ 404.1594(b)(1)(i).

[93] *See Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983).

[94] *See* Docket No. 16-9 at 21 (showing that at the time of the CPD Marrs-Espinoza was taking Darvocet, Elavil, and Welbutrin).

[95] 20 C.F.R. §§ 404.1594(b)(1)(i).

[96] Docket No. 16-8 at 13.

[97] *Id.* at 14.

17

Case No.: 5:14-cv-00921-PSG
ORDER GRANTING DEFENDANT'S MOTION TO REMAND FOR FURTHER
PROCEEDINGS

1   testimonials of pain are nearly constant.[98]  The ALJ did not meet his burden of establishing

2   Marrs-Espinoza experienced a medical improvement that would allow her to engage in

3   substantial gainful activity.[99]  The ALJ must correct these errors on remand.

4         At step seven, "a failure to first make a function-by-function assessment of the

5   individual's limitations or restrictions could result in the adjudicator overlooking some of an

6   individual's limitations or restrictions," which "could lead to an incorrect use of an exertional

7   category to find that the individual is able to do past relevant work" and "an erroneous finding

8   that the individual is not disabled."[100]  Here, the ALJ did not call a vocational expert, did not

9   detail the past relevant work Marrs-Espinoza engaged in and did not perform a function-by-

10  function assessment of Marrs-Espinoza's past relevant work.  The ALJ instead gave an

11  ambiguous finding and nonetheless moved on to step eight.  On remand, the ALJ must make a

12  clear function-by-function assessment and determination.

13        At step eight, despite Van Kirk's finding that Marrs-Espinoza had non-exertional

14  limitations of bending, stooping, crouching, climbing, kneeling, balancing, crawling, pushing or

15  pulling due to radiating pain, the ALJ relied on grid rules 202.13-202.15 to find jobs Marrs-

16  Espinoza could do.  An ALJ may only substitute the grids for vocational expert testimony when

17  they "completely and accurately represent a claimant's limitations."[101]  Because "the grids are

18

19

20

21  ─────────────────
    [98] *See* Docket No. 21 at 22.

22  [99] *See Murray*, 722 F.2d at 500.

23  [100] *See* 20 C.F.R. §§ 404.1545, 416.945; SR 96-8p, 1996 WL 374184, at *4-6; (including analysis
24  of physical abilities such as sitting, standing, walking, lifting, carrying, pushing, pulling or other
    physical functions; mental abilities such as understanding, remembering, carrying out
25  instructions and responding appropriately to supervision; and other abilities that may be affected
    by impairments, such as seeing, hearing and the ability to tolerate environmental factors).

26  [101] *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999) ("[A] claimant must be able to perform
27  the full range of jobs in a given [exertional] category" for the grids to apply); *see also Holohan v.
    Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).; *Burkhart v Bowen*, 856 F.2d 1335, 1340 (9th
28  Cir. 1988); 20 C.F.R. § 404, Subpt. P, App. 2, Rule 200(e).

18

Case No.: 5:14-cv-00921-PSG
ORDER GRANTING DEFENDANT'S MOTION TO REMAND FOR FURTHER
PROCEEDINGS

predicated on a claimant suffering from an impairment which manifests itself by limitations in meeting the strength requirements of jobs ('exertional limitations'), they may not be fully applicable" to a claimant's non-exertional limitations.[102]  But the mere allegation of a non-exertional limitation does not preclude the use of the grids—for the grids to be inadequate, the non-exertional limitation must be "'sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations.'"[103]  When "a claimant's [non-exertional] limitations are in themselves enough to limit his range of work, the grids do not apply, and the testimony of a vocational expert is required to identify specific jobs within the claimant's abilities."[104]

Here, the ALJ made no determination that the additional non-exertional limitations described by Van Kirk did not erode the occupational base.[105]  The ALJ's RFC determination that Marrs-Espinoza could do light work is not based on substantial evidence because he did not consider Miner's findings of Marrs-Espinoza's limitations, determine at step two whether Marrs-Espinoza qualifies under a listing and determine at step three whether her impairments improved medically.  Further, the ALJ did not send Marrs-Espinoza for another consultative psychological exam, such as Wechsler and Trails testing, to determine the level of her memory and concentration limitations not addressed by the consultative psychological examiner.  The testimony of a vocational expert is required where non-exertional limitations significantly limit

[102] *Lounsberry v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006).

[103] *Hoopai v. Astrue*, 499 F.3d 1071, 1075-6 (9th Cir. 2007) (quoting *Burkhart*, 856 F.2d at 1340) (holding the use of grids was appropriate where the ALJ made an adequately-supported factual determination that claimant Hoopai's depression was not a sufficiently severe non-exertional limitation); *see also Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988).

[104] *Polny v. Bowen*, 864 F.2d 661, 663–64 (9th Cir. 1988).

[105] *See* Docket No. 16-3 at 18.

19

Case No.: 5:14-cv-00921-PSG
ORDER GRANTING DEFENDANT'S MOTION TO REMAND FOR FURTHER PROCEEDINGS

United States District Court
For the Northern District of California

1

the range of work a claimant can perform.[106]  These were additional errors the ALJ must correct

2

in further proceedings on remand.

3

**SO ORDERED.**

4

Dated: March 17, 2015

5

6

PAUL S. GREWAL
United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

---

[106] *See Tackett*, 180 F.3d at 1102; *accord Bruton v. Massanari*, 268 F.3d 824, 827-28 (9th Cir. 2001).

Case No.: 5:14-cv-00921-PSG
ORDER GRANTING DEFENDANT'S MOTION TO REMAND FOR FURTHER
PROCEEDINGS